UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* MICHELLE MACKILLOP,<br><br>    Plaintiff,<br><br>v.<br><br>GRAND CANYON EDUCATION, INC.;<br>GC EDUCATION INC. F/K/A GRAND<br>CANYON UNIVERSITY, INC.; and<br>GRAND CANYON UNIVERSITY F/K/A<br>GAZELLE UNIVERSITY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-CV-11192-WGY |

## UNITED STATES' STATEMENT OF INTEREST

Pursuant to 28 U.S.C. § 517, the United States files this statement of interest to address two arguments made by the defendants in support of their motion for summary judgment.[1] First, the defendants, relying on the Supreme Court's interpretation of a consumer protection statute in *Safeco Insurance Company v. Burr*, 551 U.S. 47 (2007) ("*Safeco*"), argue that the relator must prove that the defendants' interpretation of the Incentive Compensation Ban ("ICB"), 20 U.S.C. § 1094(a)(20), was "objectively unreasonable," in order for the Court to find that the defendants acted with the requisite scienter under the False Claims Act ("FCA"). That is incorrect. The

---

[1] 28 U.S.C. § 517 provides:

    The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

The False Claims Act, 31 U.S.C. §§ 3729-3733, is the federal government's primary tool to recover losses caused by fraud in federal programs. The United States thus has a substantial interest in proper interpretation of the Act.

FCA's statutory language precludes application of *Safeco*. By its terms, the FCA has different scienter requirements than the consumer protection statute at issue in *Safeco*, and the FCA's scienter requirements are subjective, not objective. Second, this Court should address the materiality element under the FCA in accordance with *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) ("*Escobar*"), by considering a variety of factors, including some that the defendants declined to address. When considered holistically per *Escobar*, those factors do not support the defendants' argument that violations of the ICB are not material to the Department of Education or the Department of Veterans Affairs.

**I.      The Relator Does Not Need to Prove the Defendants' Interpretation of the ICB Was "Objectively Unreasonable" to Prevail on Her FCA Claims.**

The defendants assert that, to establish liability under the FCA, the relator must prove that the defendants' "interpretation of the ICB was *objectively unreasonable*." *See* Defs.' Motion for Summary Judgment ("Defs.' MSJ") [Dkt. 153] at 2 (emphasis in original). In making this argument, the defendants rely on the Supreme Court's decision in *Safeco*, interpreting the Fair Credit Reporting Act ("FCRA"). As discussed below, *Safeco* is (a) inapplicable to FCA cases because *Safeco* dealt with a different statute (the FCRA) with a different scienter standard (willfulness); and (b) is only applicable in cases where a statute is ambiguous, which the ICB is not.

**A.      *Safeco*'s Reasoning Is Inapplicable to the FCA.**

In *Safeco*, the Supreme Court interpreted a provision in a consumer protection statute, the FCRA, which imposes civil liability for "willful" violations of that statute's protections against the mishandling of credit reporting information. 15 U.S.C. § 1681n; *see* 15 U.S.C. §§ 1681-1681x. The Supreme Court held, in part, that where a provision of the FCRA was ambiguous, and where the government had not provided clarifying guidance, the defendant could not have

acted willfully under that statute. *Safeco*, 551 U.S. at 56-57. In this case, the defendants argue that, because *Safeco* interpreted the FCRA's "willful" scienter requirement to be akin to "reckless disregard," and because one state of mind giving rise to liability under the FCA is "reckless disregard," the Court should extend the *Safeco* scienter requirement to the FCA. In support, the defendants cite a decision by a divided panel in the Seventh Circuit in *United States ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455 (7th Cir. 2021) ("*Supervalu*"), applying *Safeco* to the FCA. The application of *Safeco*'s reasoning to the FCA is inapt, and this Court should reject it.

      The FCA "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 305-06 (1st Cir. 2010) (internal citation omitted). The FCA imposes liability on anyone who acts "knowingly." 31 U.S.C. § 3729(a)(1)(B). In defining "knowingly," the FCA expressly dispenses with the common law requirement of proof of specific intent to defraud, *see* 31 U.S.C. § 3729(b)(1)(B), and instead imposes liability on a person who submits a false claim to the government with "actual knowledge," "deliberate ignorance," or "reckless disregard of the truth," 31 U.S.C. § 3729 (b)(1)(A)(i)-(iii). These states of mind are subjective, not objective. *See Supervalu*, 9 F.4th at 479-80 (Hamilton, J., dissenting) (describing how the FCA's history shows that Congress understood the knowledge provisions to reach "ostrich"-like conduct); *cf. United States ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 95 (1st Cir. 2012) (holding that the "district court abused its discretion by failing to consider" witness's statements in assessing defendants' states of mind concerning allegations that defendants falsified scientific data). Knowledge under the FCA, therefore, is a fact-intensive question ordinarily left for the jury.

*See, e.g.*, *United States v. Mallory*, 988 F.3d 730, 738 (4th Cir. 2021) (upholding jury's conclusion regarding knowledge).

Although the ICB is not ambiguous (as discussed in the next section), in cases involving the violation of an ambiguous statutory or regulatory requirement, a defendant can still act with knowledge in several ways. For example, a defendant can actually "know[] that the [government] interpreted the regulations in a certain way." *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1053 (8th Cir. 2002). A defendant can also recklessly disregard notice of a contrary interpretation or fail to make reasonable inquiries. *See United States v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013) (defendant recklessly disregarded that the claim was "potentially false"). And a defendant can act with deliberate ignorance by ignoring red flags that its conduct is illegal. *See United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997); *see also* S. Rep. No. 99-345, at 4, 7 (1986) (noting Congressional intent to reach "ostrich-like" conduct because "those doing business with the Government have an obligation to make a limited inquiry to ensure the claims they submit are accurate").

Relying on *Safeco* and *Supervalu*, the defendants ask the Court to dispense with the "actual knowledge" and "deliberate ignorance" states of mind in the FCA; collapse the FCA's three states of mind into a single "reckless disregard" state of mind; and replace the FCA's "reckless disregard" state of mind intended to capture "ostrich"-like behavior with *Safeco*'s interpretation of "willful" under the FCRA. That improperly renders two statutory provisions of the FCA superfluous, dispenses with subjective intent, and "los[es] touch with the statutory text and its history and links to the common law of fraud." *Supervalu*, 9 F.4th at 474 (Hamilton, J., dissenting). Such a construction also contradicts decisions by numerous other courts recognizing

4

that a defendant can act with "knowledge" under the FCA even if a regulatory requirement is ambiguous.  *See, e.g.*, *Mallory*, 988 F.3d at 736-38 (rejecting argument that "because [a law] is ambiguous," a defendant "cannot have knowingly violated the False Claims Act"); *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) ("Although ambiguity may be relevant to the scienter analysis, it does not foreclose a finding of scienter."); *United States v. R&F Props. of Lake County, Inc.*, 433 F.3d 1349, 1358 (11th Cir. 2005) (same); *Allina Health Sys. Corp.*, 276 F.3d at 1053-54 (same).  As the dissent in *Supervalu* noted, applying *Safeco*'s reasoning to the FCA "creates a safe harbor for deliberate or reckless fraudsters whose lawyers can concoct a *post hoc* legal rationale that can pass a laugh test" and "makes subjective bad faith 'irrelevant' *in fraud cases*."  *Supervalu*, 9 F.4th at 473 (Hamilton, J., dissenting) (emphasis in original).  Such an interpretation of the FCA is unwarranted, and the Court should reject it.

    **B.** **The Incentive Compensation Ban Is Unambiguous.**

Putting aside the defendants' strained statutory arguments based on *Safeco*, the Supreme Court's construction of "willful" in *Safeco* only applied where the text of the consumer protection statute was ambiguous.  *See Supervalu*, 9 F.4th at 468 n.7.  Here, however, the ICB is not ambiguous.

By its broad language, the ICB prohibits compensating recruiters with increased salaries for recruiting students, as the relator alleges the defendants did.  In particular, the ICB prohibits:

> provid[ing] any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance…

20 U.S.C. § 1094(a)(20).  The phrase "any commission, bonus, or other incentive payment" includes compensation, such as the increased salaries at issue in the defendants' compensation

plan. Further, the phrase "based directly or indirectly on success in securing enrollments" makes plain that recruiter compensation cannot be conditioned in any way on securing enrollments. *Id.*; *see also* 34 C.F.R. § 668.14(b)(22)(i) (implementing regulation stating that compensation may not be "based *in any part*, directly or indirectly, upon success in securing enrollments or the award of financial aid") (emphasis added)).

Beyond the ICB's clear language, as the relator highlights in her Opposition to Defendants' Motion for Summary Judgment ("Rel. Opp."), [Dkt. No. 168] at 4-5, the Department of Education has emphasized that institutions cannot award compensation based on success in securing student enrollments. In 2010, in the Federal Register notice implementing the ICB regulations, the Department recognized that institutions may need to consider "a variety of standard evaluative factors" in adjusting employee compensation, but the regulations clarify that the institution "may not consider the employee's success" in enrolling students or securing financial aid in making these adjustments. 75 Fed. Reg. 66832, 66876 (Oct. 29, 2010). Again, in a 2015 Federal Register notice, the Department further explained that enforcement decisions would elevate substance over form, so that the Department would "focus on the substance of the [compensation] structure rather than the label given to the structure by an institution" for determining whether enforcement action is merited. 80 Fed. Reg. 73991, 73992 (Nov. 27, 2015).

In sum, even if *Safeco*'s standard was appropriate under the FCA—which it is not—the ICB is clear, and the Department's guidance is available to any institution that receives Title IV funds. The Court therefore need not answer the question of whether the defendants' interpretation of the ICB was objectively reasonable or unreasonable because the defendants cannot demonstrate the threshold requirement of ambiguity. *See United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 313-14 (1st Cir. 2010) (rejecting argument that the defendant did

not act "knowingly" where the federal agency had not warned the defendant away from its conduct because the case did not involve a "disputed legal question").

## II. Violations of the Incentive Compensation Ban Are Material to the Department of Education and the Department of Veterans Affairs.

In assessing the materiality element of the FCA, no single fact is dispositive in this, or any, FCA case.  Courts should take a holistic approach and consider a variety of factors—among them, whether the falsehood went to the "essence of the bargain," whether the "noncompliance is minor or insubstantial," whether the falsehood involved an "express[] . . . condition of payment," and whether "the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated."  *Escobar*, 136 S. Ct. at 2003 & n.5.

The defendants—while insisting that their actions did not violate the ICB—argue that any such ICB violations are not material to the government because (1) the government has continued authorizing payments to the defendants, despite knowing of the relator's allegations; and (2) the government has not intervened in this litigation.  The defendants made these arguments at the motion to dismiss stage, and the Court rejected them.  Nothing in the summary judgment record should change the Court's assessment.  Furthermore, as discussed below, the Court should consider the other materiality factors the defendants decline to address.

### A. Knowledge of the Relator's Allegations Is Not Dispositive of Materiality.

The defendants argue that, because the government was aware of the relator's allegations and did not cut off Title IV funding to students enrolled at Grand Canyon University ("Grand Canyon") during the pendency of this litigation, that shows that their alleged ICB violations are not material to the government.  Mere awareness of the relator's allegations, however, is insufficient to establish that the government had actual knowledge of an ICB violation and considered that violation immaterial.  *See United States ex rel. Escobar v. Universal Health*

*Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) ("*Escobar II*") ("[M]ere awareness of allegations concerning noncompliance with regulations is different from knowledge of actual noncompliance."); *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 906-07 (9th Cir. 2017) (noting that agency inaction cannot be dispositive where the "parties dispute exactly what the government knew and when, calling into question its 'actual knowledge'").

The record does not reflect that either the Department of Education or the Department of Veterans Affairs (the "VA")—the two agencies that the relator alleges were affected by the defendants' conduct—had actual knowledge of ICB violations. The defendants have repeatedly denied that their compensation practices violated the ICB, *see* Defs.' MSJ at 7-10, and the relator alleges that the violation turns, not on the compensation plan that the defendants claimed to have, but on a separate plan that the defendants concealed from the government and implemented in practice through individual promotion decisions. Moreover, neither the Department of Education nor the VA reviewed or audited the defendants' compensation practices that are alleged in the relator's Second Amended Complaint. *See* Rel. Statement of Material Facts, Ex. 67 ("Crim Decl.") [Dkt. 165] at ¶ 4; Rel. Statement of Material Facts, Ex. 66 ("Dworakowski Decl.") [Dkt. 165] at ¶ 6. While the defendants cite a Department of Defense letter concerning the defendants' alleged compliance with certain incentive compensation rules, this letter has no bearing on the relator's claims because it does not concern educational funding for military veterans or the VA.[2]

---

[2] The defendants are incorrect that the Department of Defense ("DoD") "disperses tuition assistance funds to military veterans." Defs.' MSJ at 18. The VA does in some instances provide education benefits to active-duty servicemembers of the Armed Forces, *see, e.g.*, 38 U.S.C. §§ 3011, 3313(e), and DoD may also provide education benefits directly to active-duty servicemembers, including via the statutory program described in 20 U.S.C. § 1094. But the

The disputed and complex nature of the alleged violation by the defendants, and the lack of agency review by the Department of Education and the VA, distinguish this case from *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29, 35 (1st Cir. 2016), on which Defendants rely heavily. In *DePuy*, the relators told the Food and Drug Administration ("FDA") about "every aspect of the design of the [medical device] that they felt was substandard," and the FDA subsequently monitored a manufacturing plant and informed the device manufacturer that it had an affirmative obligation to disclose any updated safety information about the device. *Id.* The First Circuit, inferring that the FDA was able to investigate the specific design defect alleged by the relators, found that the relators' materiality allegations were implausible.

Given the disputed violation in this case, the Court should not place much weight on the government's continued payment of student funding. There are various reasons why the government might continue providing student loans to students enrolled at Grand Canyon under these circumstances, including to avoid collateral consequences to those students if their aid is suspended. *See* United States' Statement of Interest ("SOI") [Dkt. 62] at 10. In essence, the defendants assert that, after receiving any allegations of violations from a qui tam relator, the government should cease funding to student-borrowers attending, or would-be borrowers seeking to attend, Grand Canyon. The import of the defendants' materiality argument should give the Court pause—such a result could be vastly unfair to borrowers or would-be borrowers and is hardly practicable.

Under similar facts to those presented here, courts have rejected arguments that continued payment, despite knowledge of a relator's allegations, is dispositive of materiality. *See, e.g.,*

---

relator's complaint does not concern tuition funding to active-duty servicemembers, as far as the government understands.

9

*Escobar II*, 842 F.3d at 110 (noting that there was no evidence that the government had actual knowledge of any of the allegations—"much less their veracity"—at the time it paid the claims at issue in the case); *United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 10 F.4th 765, 777 (7th Cir. 2021) (rejecting defendant's materiality argument that "the government not only continued paying it after [the relator] brought this case, but it also renewed its contract with [the defendant] twice during that time"); *United States ex rel. Cimino v. International Bus. Machines Corp.*, 3 F.4th 412, 417 (D.C. Cir. 2021) (rejecting defendant's materiality argument where the government extended a license agreement with the defendant in 2015, after the relator filed his complaint). Indeed, in assessing materiality, "it makes sense not to place much weight on the government's response in the wake of such [qui tam] litigation because, prior to discovery and a formal court ruling, the relator's allegations are just that—allegations, and the government may not necessarily have knowledge of all the material facts." *See United States ex rel. Foreman v. AECOM*, No. 20-2756-CV, 2021 WL 5406437, at *17 (2d Cir. Nov. 19, 2021). Accordingly, the Court should reject the defendants' argument that the government's continued student loan funding to Grand Canyon students shows the government does not consider ICB violations material.

      **B.**    **The Government's Intervention Decision Is Not Relevant to Materiality.**

In arguing that the relator has not demonstrated materiality, the defendants also place heavy emphasis on the Department of Justice's lack of intervention in this qui tam, but whether the government elected to intervene in qui tam litigation is absent from the Supreme Court's list of factors relevant to materiality in *Escobar*. In fact, the government had declined to intervene in *Escobar*, and yet the Supreme Court did not cite non-intervention as a factor that courts should consider when assessing materiality. *See Escobar*, 136 S. Ct. at 2001-04. "[I]ntervention decisions are, at best, of minimal relevance" to materiality under the FCA. *United States ex rel.*

*International Bhd. of Elec. Workers Local Union No. 98 v. Farfield Co.*, 5 F.4th 315, 346 (3d Cir. 2021). If a relator could not meet the element of materiality whenever the government chose not to intervene, that would undermine the text and purpose of the FCA. *See United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 836 (6th Cir. 2018). As the United States discussed in its prior Statement of Interest, there are many reasons for the government's litigation choices, none of which may have anything to do with the merits of the relator's allegations. *See* SOI at 6.

      **C.**      **The Court Should Consider the Other Materiality Factors.**

The Court must also consider *Escobar*'s other materiality factors, which the defendants decline to address. As the summary judgment record reflects, both the Department and the VA require compliance with the ICB as a condition of funding. *See United States ex rel. Rose v. Stephens Institute*, 909 F.3d 1012, 1020-21 (9th Cir. 2018) (noting that the government's triple-conditioning of payment of Title IV funds on compliance with the ICB is "certainly probative evidence of materiality"); Crim Decl. at ¶ 3; Dworakowski Decl. at ¶ 4. That the Department and the VA each place emphasis on institutions' compliance with the ICB as a matter of regulation and of contract also shows that such compliance goes to the "very essence of the bargain" between the parties. *See Escobar II*, 842 F.3d at 110 (noting that the centrality of certain licensing requirements in the regulatory scheme indicated that they went to the essence of the bargain between the government and its contracted healthcare providers). And, the government regularly takes enforcement action against those who violate the ICB. *See Stephens Institute*, 909 F.3d at 1020-21 (considering past Department of Education actions to address violations of the ICB in materiality analysis); Crim. Decl. at ¶ 4 & Ex. A (detailing numerous cases where the Department of Education fined institutions and revoked an institution's program participation agreement); *see also* VA Decl. ¶ 5-6. Finally, the defendants' noncompliance was

not "minor or insubstantial" where the defendants allegedly contravened their own counsel's advice and implemented institution-wide practices that violated the ICB over multiple years. *See* Rel. Opp. at 6-8. These factors, considered holistically, do not support the defendants' argument that violations of the ICB are not material to the Department of Education and the VA.

## CONCLUSION

For these reasons, the United States requests that the Court (i) not apply *Safeco* or *Supervalu* in evaluating the defendants' scienter under the False Claims Act, (ii) assess materiality holistically as required under *Escobar*, and (iii) deny the defendants' motion for summary judgment to the extent it argues that ICB violations are not material under the FCA to the Department of Education or the Department of Veterans Affairs.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

*/s/ Alexandra Brazier*
Brian M. LaMacchia
Alexandra Brazier
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
brian.lamacchia@usdoj.gov
alexandra.brazier@usdoj.gov

Dated: November 29, 2021

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this day I filed a true and correct copy of the within and foregoing with the Clerk of Court using the Court's CM/ECF system, which will automatically serve all counsel of record.

                                                */s/ Alexandra Brazier*
                                                Alexandra Brazier
Dated: November 29, 2021              Assistant United States Attorney