**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle MacKillop,<br><br>              Plaintiff,<br><br>v.<br><br>Grand Canyon Education Incorporated, et al.,<br><br>              Defendants. | No. CV-23-00467-PHX-DWL<br><br>**ORDER** |

The essential chronology of this case is as follows. On June 7, 2018, Relator initiated this action in the District of Massachusetts, where it was assigned to Judge Young. (Doc. 1.) On July 6, 2020, Defendants moved to transfer this action to the District of Arizona. (Doc. 38.) On November 18, 2020, Judge Young granted the transfer request in part, holding that this action would "be sent to the District of Arizona upon conclusion of final pretrial conference." (Doc. 70.) On September 6, 2022, Judge Young denied Defendants' motion for summary judgment. (Doc. 201.) On February 13, 2023, Defendants filed a motion to "immediately effectuate the transfer of the case to the District of Arizona," emphasizing that "[n]othing remains to be done in this case except the trial and ancillary proceedings related to trial." (Doc. 216.) On March 24, 2023, this action was formally transferred to the District of Arizona. (Doc. 225.) Following the transfer, trial was set to begin on April 30, 2024. (Doc. 232.)

Months after the trial date was selected, Defendants filed a motion for reconsideration of Judge Young's summary judgment order (Doc. 235 [filed September

29, 2023]) and a motion for leave to file a motion to exclude Relator's expert (Doc. 257 [filed April 5, 2024]). Both motions eventually became fully briefed. (Docs. 239, 242, 260, 261.) However, shortly before trial, and before the Court had ruled on either motion, the parties filed a joint notice announcing that they had "reached a settlement in principle to resolve the above-captioned matter, subject to execution of a final settlement agreement and approvals required by the United States." (Doc. 265.) As a result, the Court denied all pending motions as moot, vacated the trial date, and set a dismissal deadline. (Doc. 266.)

Unfortunately, the parties' settlement fell apart. (Doc. 288.) As a result, in January 2025, following consultation with the parties, the Court set a new trial date of October 14, 2025. (Doc. 292.) Many months later, and on the veritable eve of the new trial date, Defendants refiled the same two substantive motions that became fully briefed before the last trial date but were then denied as moot based on the parties' seeming settlement: (1) a motion for reconsideration of Judge Young's summary judgment order (Doc. 301 [filed September 8, 2025]); and (2) a motion for leave to file a motion to exclude Relator's expert (Doc. 302 [filed September 8, 2025]).

During the last briefing process, the Court became familiar with the issues raised in the two pending motions. Accordingly, rather than wait for the motions to again become fully briefed, the Court believes it is more efficient to set a status conference (which may obviate the need for further briefing or at least limit the scope of that briefing). The status conference has now been set for September 15, 2025. (Doc. 304.) At the status conference, the parties should be prepared to address the following issues.

1.     <u>Motion For Reconsideration</u>. Under LRCiv 7.2(g)(2), "[a]bsent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." Judge Young denied Defendants' motion for summary judgment on September 6, 2022, but Defendants waited more than a year—until September 29, 2023—to initially move for reconsideration, then waited nearly two more years—until September 8, 2025—to refile the motion for

reconsideration. (Docs. 201, 235, 301.)

At a May 3, 2023 status conference, Defendants attempted to justify their delay in filing the initial reconsideration motion by noting that the case had been stayed for much of the previous year. But Judge Young did not stay the case until October 3, 2022 (Doc. 203), and the Court perceives no good reason why Defendants could not have filed their motion before then, at least as it relates to the bulk of their reconsideration arguments.[1]

Defendants also contend that, during the May 2023 status conference, the Court preemptively excused any non-compliance with LRCiv 7.2(g)(2)'s presumptive 14-day filing deadline. (Doc. 301 at 6 n.1 ["At the May 3, 2023 status conference, the Court expressly permitted Defendants to file this Motion even though more than 14 days have passed since the District of Massachusetts issued its Order."].) This is untrue. During the status conference, the Court simply reminded Defendants that they would ordinarily be required to move for reconsideration within 14 days, asked them if they had a good excuse for their delay (a question they failed to answer persuasively), and then informed them that although they could file a motion for reconsideration, the case would not be put on hold while they did so.

During the last round of briefing, Relator also raised significant accusations of gamesmanship. Defendants' renewed motion to transfer this action to the District of Arizona, which they filed in February 2023, was predicated on their assertion that "[n]othing remains to be done in this case except the trial and ancillary proceedings related to trial." (Doc. 216.) Nevertheless, during their very first post-transfer court appearance in the District of Arizona—the status conference held in May 2023—Defendants voiced an intention to seek reconsideration of the summary judgment order. Given that chronology, it is difficult to avoid the inference that Defendants simply delayed filing their

---

[1] The one exception is Defendants' reconsideration argument based on *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023). Because *SuperValu* was not decided until June 1, 2023, Defendants could not have sought reconsideration based on that case before the March 2023 transfer. Even so, Defendants did not file their initial reconsideration motion until September 29, 2023, nearly four months after *SuperValu* was decided (and well beyond LRCiv 7.2(g)(2)'s presumptive 14-day window) and did not refile their reconsideration motion until September 8, 2025, more than two years after *SuperValu* was decided.

- 3 -

reconsideration motion until the transfer went through, in the hope that the new judge might be more persuaded by their summary judgment arguments than the previous judge. Courts should be wary of encouraging this sort of gamesmanship. *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) ("[I]n general, the successor judge is discouraged from reconsidering the decisions of the transferor judge."); *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) (explaining that, under "the variant of the law of the case doctrine that relates to the re-examination of a prior ruling by a different" judge following a transfer, "the rightful expectation of litigants [is] that a change of judges mid-way through a case will not mean going back to square one" and that "[a]lthough the second judge may alter previous rulings if he is convinced they are incorrect, he is not free to do so merely because he has a different view of the law or facts from the first judge") (cleaned up). Nor does this dynamic qualify as good cause for failing to comply with the deadlines that apply to reconsideration motions.

Finally, although those considerations may have alone provided a basis for denying Defendants' initial reconsideration motion based on untimeliness, the timing of the refiled motion now before the Court seems even more unjustified. Defendants have known since December 2024 that this case was back on the trial calendar and have known since January 2025 that the new trial date was October 14, 2025. (Docs. 288, 292.) Nevertheless, Defendants waited until September 8, 2025—just as the Court and the parties were being deluged with motions *in limine* and other trial preparations—to refile it. (Doc. 301.)

Under these circumstances, the Court is tentatively inclined to deny the motion for reconsideration as untimely under LRCiv 7.2(g)(2), given that it was filed more than three years after the order it seeks to challenge (Judge Young's September 6, 2022 summary judgment order) with no good cause for the delay. Nevertheless, the Court will give the parties an opportunity to address this issue at the status conference before deciding how to proceed and whether to authorize further briefing. *See* LRCiv 7.2(g)(2) ("No response to a motion for reconsideration and no reply to the response may be filed unless ordered by the Court . . . .").

2. <u>Motion For Leave To File A Motion To Exclude Relator's Expert</u>. A timeliness issue also arose during the last round of briefing regarding Defendants' motion for leave to file a motion to exclude Relator's expert ("Dr. Rice"). In a nutshell, Defendants argued their proposed motion cannot be considered untimely because neither Judge Young nor this Court ever set a deadline for filing expert-exclusion motions. (Doc. 261 at 2 ["Due in part to the unusual procedural history of this case, no local rule, standing order, or Court order ever set a deadline for the parties to file *Daubert* motions."].) Defendants also emphasized that the parties once indicated, in a memorandum submitted to Judge Young on February 3, 2022, that they intended for *Daubert* motions to be filed in this Court following the transfer: "The Parties intend to submit pretrial motions, including *Daubert* challenges and motions in limine, to be decided by the Court overseeing trial of this matter." (Doc. 178 at 23.) Meanwhile, Relator argued that although the formal scheduling order from the District of Massachusetts (Docs. 75, 78) did not set a deadline for filing expert-exclusion motions, Judge Young separately ordered, during "the final pretrial conference [on February 8, 2022 which] was not transcribed, as it was held in chambers," that motions in limine had to be filed no more than 30 days after the ruling on the summary judgment motion and that *Daubert* motions needed to be "filed before motions in limine." (Doc. 260 at 3 & n.2.) Relator also provided email correspondence from April 2022 in which Relator's counsel stated "we recall [Judge] Young" ordering this deadline and Defendants' counsel apparently did not respond to or dispute that characterization. (Doc. 260-1.)

If, as Relator contends, Judge Young ordered that *Daubert* motions had to be filed no more than 30 days after the ruling on the summary judgment motion, Defendants' pending leave request is untimely. *See, e.g., United States v. Moya*, 5 F.4th 1168, 1196 (10th Cir. 2021) ("Moya filed his eleventh-hour motion to exclude Dr. Andrews just over a week before trial. . . . Given its refusal to extend the deadline for *Daubert* motions, the district court could have denied as untimely Moya's motion to exclude Dr. Andrews."); *Feliciano-Hill v. Principi*, 439 F.3d 18, 24 (1st Cir. 2006) ("Parties have an obligation to

object to an expert's testimony in a timely fashion, so that the expert's proposed testimony can be evaluated with care. Dr. Feliciano-Hill did not make a timely motion here and has not offered any reason for her delay. The district court was on firm ground in refusing her motion as untimely."); *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2003) ("The truth-seeking function of litigation is best served by an orderly progression, and because *Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction, . . . a district court [may] reject as untimely *Daubert* motions raised late in the trial process . . . ."); *Penthouse Owners Assoc., Inc. v. Certain Underwriters at Lloyd's, London*, 2011 WL 13073684, *2 (S.D. Miss. 2011) (denying pretrial *Daubert* motion because it "was not filed until January 12, 2011, over four months past the deadline for *Daubert* motions," and was thus "untimely").

On the other hand, if Judge Young did not, during the unrecorded in-chambers conference, set a deadline for filing expert-exclusion motions, the Court would be hard-pressed to deny the pending leave request on untimeliness grounds. This would be a frustrating outcome, as the Court never set a post-transfer deadline for filing expert-exclusion motions due to its understanding that the deadline surely must have expired before transfer—an understanding that was informed, in part, by Defendants' own statements and conduct, including assuring Judge Young that "[n]othing remains to be done in this case [post-transfer] except the trial and ancillary proceedings related to trial" (Doc. 216 at 1) and not mentioning the possibility of a *Daubert* motion during the first post-transfer status conference (Doc. 230). Nevertheless, a finding of untimeliness presupposes the existence of deadline that was missed, so without a deadline, there would be no basis for a finding of untimeliness. *Cf. United Property & Casualty Ins. v. Couture*, 639 F. Supp. 3d 590, 596 (D.S.C. 2022) (declining to deny *Daubert* motions on untimeliness grounds where the "scheduling orders do not specifically mention *Daubert* motions" and were ambiguous as to whether other deadlines applied to *Daubert* motions); *Plexxikon Inc. v. Novartis Pharmaceuticals Corp.*, 2020 WL 1325068, *1 (N.D. Cal. 2020) ("The Court's general practice is to hear *Daubert* motions on or before the dispositive motions hearing

deadline. However, the Court acknowledges that there is ambiguity in its standing order regarding when to file *Daubert* motions. The Court will not penalize Defendant based on a non-explicit deadline . . . ."); *Taylor v. First Choice Physical Therapy P.C.*, 2014 WL 7896574, *6-7 (D. Wyo. 2014) (criticizing counsel for filing *Daubert* motions on the eve of trial but declining to deny them on untimeliness grounds because "[t]he Court acknowledges there is no deadline for *Daubert* motions in this case . . . [so] Defendants['] motions are not 'late' in that they were filed after a deadline").

The timeliness analysis thus hinges on what happened during the unrecorded in-chambers conference in the District of Massachusetts. Unfortunately, the record on that point is not fully developed. Relator's counsel previously asserted, in a brief, that "the Mass. Court held a final pretrial conference on Feb. 8, 2022, at which the Court set that motions in limine were to be filed within 30 days of its decision on summary judgment and advised that any *Daubert* motions be filed before motions in limine." (Doc. 260 at 3.) Defendants, however, did not directly address this assertion in their previous reply brief—the assertion in that brief that "[t]he minute entry for those [unrecorded] proceedings . . . speaks only to motions in limine and says nothing about *Daubert* challenges" (Doc. 261 at 2) is true but begs the question of whether Judge Young made the additional oral ruling that Relator contends he made. Likewise, Defendants' refiled leave request does not directly address this point. (Doc. 302.)

Accordingly, at the status conference, each counsel who was present during the unrecorded in-chambers conference in the District of Massachusetts, and who continues to serve as counsel in this action, should be prepared to describe his or her recollection of what was said during the unrecorded in-chambers conference on the topic of deadlines for expert-exclusion motions. Depending on outcome of that inquiry, the Court may require counsel to submit declarations on this topic.

Finally, apart from the question of untimeliness, Relator also previously argued that "Judge Young already ruled that Dr. Rice is permitted to testify pursuant to Rule 702." (Doc. 260 at 1.) This is true—Judge Young's order denying Relator's motion to exclude

the testimony of Defendants' rebuttal expert, William Jennings, specifies not only that Jennings may testify but that Dr. Rice may testify as well. (Doc. 222 at 1-2, emphasis added ["*Both Messr's Rice and Jennings may testify pursuant to Fed. R. Evid. 702*. Neither may testify to anything beyond what is set forth in their respective reports (or any supplemental report). Neither may interpret or opine on the meaning of any law or regulation. Both may (consistent with analysis set out in their respective reports) criticize the methodology and results of the other. . . . Naturally the trial judge will enforce the precise contours of this order on a question by question[] basis."].)

This ruling is initially surprising in the absence of any *Daubert* motion aimed at excluding the testimony of Dr. Rice, but a review of Defendants' opposition to Relator's *Daubert* motion reveals that the entire opposition was grounded in the notion that Dr. Rice's expert opinion is unreliable and must be rebutted by the testimony of Jennings. (*See, e.g.*, Doc. 220 at 6 ["Dr. Rice's Report, standing alone, would confuse the jury."].) In any event, Judge Young already ruled in March 2023 that Dr. Rice "may testify pursuant to Fed. R. Evid. 702" (Doc. 222 at 1) and Defendants have never sought reconsideration of that ruling in the nearly two-and-a-half years since it was issued.[2] Thus, even if the proposed *Daubert* motion could be deemed timely, the Court is inclined to deny leave to file it because Judge Young has already ruled on this issue. The Court will hear further argument at the status conference but notes that Defendants' assertion in their earlier reply brief that Judge Young's March 2023 order is not a ruling "as to the admissibility of Dr. Rice's testimony" (Doc. 261 at 3) does not appear to comport with the plain meaning of Judge Young's order.

Dated this 11th day of September, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[2] This ruling also implicitly supports the notion that Judge Young did not believe Defendants still had time to separately file a *Daubert* motion as to Dr. Rice.