**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle MacKillop,<br><br>          Plaintiff,<br><br>v.<br><br>Grand Canyon Education Incorporated, et al.,<br><br>          Defendants. | No. CV-23-00467-PHX-DWL<br><br>**ORDER** |

This is a qui tam action in which the United States declined to intervene. (Doc. 24.) After years of litigation, Relator and Defendants have reached a settlement in principle. (Doc. 309.) During a recent status conference, the United States announced that it does not intend to object to the settlement. (Doc. 312.) Given these developments, the parties have informed the Court that they believe the only remaining step will be for them to file a joint stipulation to dismiss under Rule 41(a)(1)(A), which will be self-executing and result in the termination of this action. (*Id.*) In a related vein, the parties have indicated that they do not believe the Court has any obligation (or power) to review the settlement terms in light of the parties' agreement to those terms and the lack of objection by the United States:

> To the extent the relator and the defendant cannot successfully negotiate a settlement of the fees, expenses, and costs, the relator can file a fee petition with the court pursuant to Fed. R. Civ. P. 54 and any applicable local rules, and the court then conducts a reasonableness assessment and rules on the dispute. That situation is not present here, as there is a successfully negotiated settlement of that amount, and there is no dispute requiring the

Court's assessment.

> Similarly, to the extent the relator and the United States cannot successfully negotiate a settlement of the relator's share, the relator can seek the court's assistance in enforcing the relator's right to a share of the proceeds resulting from the qui tam. The court then conducts a reasonableness review to determine if the amount offered by the United States is reasonable under the circumstances or if the relator is entitled, in the court's view, to a higher percentage. That situation is also not present here, and Relator does not anticipate it will be. Rather, counsel for Relator are in active negotiations with counsel for the United States on the amount of the relator's share under 31 USC §3730 (d)(2), and the expectation is that there will be an agreed-upon amount reached through negotiation (between 25%-30% of the settlement amount), which agreement will then be reduced to a written contact agreement between the United States and Relator. Should such an agreement be reached, there would be no adversarial controversy between the parties to that share contract and therefore no justiciable controversy between Relator and the United States.

(Doc. 309 at 8-9.)

Respectfully, the Court is not sure this is correct. The relevant statute here is 31 U.S.C. § 3730(d), which is entitled "Award to qui tam plaintiff." Subdivision (d)(2) provides:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which *the court decides is reasonable* for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses *which the court finds to have been necessarily incurred*, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

*Id.* (emphases added). In light of the italicized text, it appears that in a qui tam action (like this one) in which the United States declined to intervene, the Court must approve two aspects of any settlement: (1) the Court must determine whether the relator's negotiated share of the settlement proceeds (which must, in any case, be between 25-30% of the proceeds) is "reasonable"; and (2) if the relator receives an award for expenses (apart from

an award for attorneys' fees and costs), the Court must determine whether those expenses were "necessarily incurred."[1]

The relevant caselaw supports interpreting § 3730(d)(2) as imposing these obligations. The Ninth Circuit has broadly recognized that "the district court must approve a proposed settlement in a qui tam case." *U.S. ex rel. Sharma v. Univ. of S. Cal.*, 217 F.3d 1141, 1143 (9th Cir. 2000). District courts have also held that judicial approval of the reasonableness of the relator's share and of any expense award is required, even in the absence of disagreement between the parties or objection from the United States. *See, e.g., U.S. ex rel. Gelman v. Donovan*, 2020 WL 4251363, *2 (E.D.N.Y. 2020) ("[T]o grant approval of the settlement here, the Court must consider whether the Agreement's allocation of the proceeds to Relator Gelman is within the statutory ranges and reasonable. And separately the Court must analyze whether the expenses were necessarily incurred and reasonable . . . .") (citation omitted); *U.S. ex rel. Parikh v. Premera Blue Cross*, 2007 WL 1461165, *2 (W.D. Wash. 2007) ("Relator, Defendant, and the United States . . . argue that this settlement presents unique circumstances that mitigate against court oversight . . . [in part because] the Government has reviewed and does not object to the settlement. . . . [T]he parties have not cited, and the Court has not found, any authority for the proposition that the Court may dismiss a qui tam case without reviewing the reasonableness of the settlement terms where all parties and the Government agree to the dismissal. Given the language of § 3730(d)(2), and the discussions in [Ninth Circuit cases], the Court concludes that it must determine whether the settlement is reasonable before ordering dismissal.").

For these reasons, the Court is disinclined to accept the parties' suggestion that the only remaining step in this case will be for the parties to file a self-executing stipulation of dismissal under Rule 41(a)(1)(A). Instead, it appears that dismissal cannot occur unless

---

[1] The Court acknowledges that such judicial-approval-of-settlement requirements are unusual. *See generally Evans v. Centurion Managed Care of Ariz. LLC*, 686 F. Supp. 3d 880, 881-82 (D. Ariz. 2023) (discussing "[t]he general rule . . . that courts have no role in approving settlement agreements" but noting that "[t]here are a few exceptions to the general prohibition against judicial involvement in the approval of settlement agreements," including when the underlying action arises under "one of those federal statutes that requires judicial approval of settlement agreements").

and until the Court determines (1) whether Relator's negotiated share of the award is "reasonable"; and (2) whether the expenses underlying any negotiated expense award were "necessarily incurred."

Furthermore, assuming this conclusion is correct, the Court must identify a process for conducting its review. Although it appears the parties wish to keep the details of their settlement confidential, the Court is skeptical that such an approach would be permissible. *Gelman*, 2020 WL 4251363 at *4 ("If the parties wish to hide the fees, costs, expenses, and relator awards from the Court and public view by including those terms in separate agreements and not submitting them to the Court, the FCA precludes such an outcome. For the Court to approve the amounts awarded to Relator as reasonable—either from the proceeds or for fees, costs, and expenses—it must know those amounts: that is what it means to obtain Court approval of dismissal."). Indeed, if the settlement-approval process were conducted via secret, sealed proceedings, the public would have no way to evaluate the soundness of the Court's resulting approval decision. This would undermine one of the fundamental reasons underlying the strong presumption in favor of public access to judicial filings. *Cf. Randall v. PDW Prods. LLC*, 2019 WL 3017624, *1-2 (D. Ariz. 2019) (denying the parties' joint request to file their settlement agreement under seal, in a case where the parties argued that judicial approval of the settlement agreement was required, and emphasizing that "allowing parties to file their settlement agreement with the settlement amounts redacted does not effectively address the public interest in evaluating the court's approval decision"). Thus, in *Gelman*, the court required the parties to submit publicly filed declarations setting forth the relevant settlement terms, as well as a memorandum of law addressing why the court should grant approval under the relevant standards. *Gelman*, 2020 WL 4251363 at *4. The Court is inclined to follow the same approach here.[2]

---

[2] In *Parikh*, the court gave the parties the option of filing the relevant settlement documents under seal. *Parikh*, 2007 WL 1461165 at *3 ("The parties shall file a copy of their settlement agreement and/or declarations explaining why the settlement terms are reasonable with the Court no later than Monday, May 21, 2007. If the parties wish to have the settlement agreement and/or declarations reviewed under seal, they may file a motion to seal by following the provisions of Local Civil Rule 5(g)."). That approach, however,

Nevertheless, the Court also wishes to hear from the parties before reaching a final decision as to how to proceed.

Accordingly,

**IT IS ORDERED** that by November 7, 2025, the parties must file a joint memorandum addressing the issues discussed in this order.

Dated this 24th day of October, 2025.

Dominic W. Lanza
United States District Judge

---

does not take into account the considerations raised above.