MORGAN VERKAMP LLC
Chandra Napora, Ohio Bar #0092886 (*pro hac vice*)
Jonathan M. Lischak, Ohio Bar #0097669 (*pro hac vice*)
4410 Carver Woods Dr., Ste. 200
Cincinnati, OH 45242 Telephone: (513) 651-4400
chandra.napora@morganverkamp.com
jonathan.lischak@morganverkamp.com

TODD & WELD LLP
Christopher R. O'Hara, MA BBO #548611 (*pro hac vice*)
Evan A. Johnson, MA BBO # 699582 (*pro hac vice*)
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
cohara@toddweld.com
ejohnson@toddweld.com

JEFF NEWMAN LAW
Jeffrey A. Newman, MA BBO # 370450 (*pro hac vice*)
One Story Terrace
Marblehead, MA 01945
(617)823-3217
Jeffrey.newman1@gmail.com

VEZINA LAW GROUP
J. Marc Vezina, Esq., MI Bar #P76232 (*pro hac vice*)
Kelli M. Khalaf, LA Bar #23213 (*pro hac vice*)
18 So. Broadway Street, Suite 200
Lake Orion, MI 48362
(248) 558-2701
jmv@vezinalaw.com
kkhalaf@vezinalaw.com

*Attorneys for Plaintiff-Relator*

ALSTON & BIRD LLP
Derin B. Dickerson, GA Bar #220620 (*pro hac vice*)
Jason D. Popp, GA Bar #213057 (*pro hac vice*)
Gavin Reinke, GA Bar #159424 (*pro hac vice*)
Caroline R. Strumph, GA Bar #250168 (*pro hac vice*)
Stephen Simrill, GA Bar #958166 (*pro hac vice*)
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
derin.dickerson@alston.com
jason.popp@alston.com

1

gavin.reinke@alston.com
caroline.strumph@alston.com
stephen.simrill@alston.com

*Attorneys for Defendants Grand Canyon Education, Inc. and GC Education Inc.*

SAUL EWING LLP
Aloke Chakravarty, MA Bar #637288 (*pro hac vice*)
131 Dartmouth Street
Suite 501
Boston, MA 02116
Telephone: (617) 912-0949
aloke.chakravarty@saul.com

Steven M. Gombos, VA Bar 30788 (*pro hac vice*)
David A. Obuchowicz, VA Bar 82483 (*pro hac vice*)
Jacob C. Shorter, VA Bar 82638 (*pro hac vice*)
GOMBOS LEYTON PC
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: 703-934-2660
sgombos@glpclaw.com
dobuchowicz@glpclaw.com
jshorter@glpclaw.com

*Attorneys for Defendant Grand Canyon University*

ALLISON C. CARROLL
Trial Attorney
U.S Department of Justice, Civil Division,
Commercial Litigation Branch, Fraud Section
175 N Street, N.E.
Washington, DC 20002
Phone: (202) 353-1006
Allison.C.Carroll@usdoj.gov

BRIAN M. LAMACCHIA
Assistant United States Attorney
United States Attorney's Office, District of Massachusetts
John J. Moakley U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3100

brian.lamacchia@usdoj.gov

LON R. LEAVITT
Assistant United States Attorney
United States Attorney's Office, District of Arizona
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Phone: (602) 514-7500
Lon.Leavitt@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, ex. rel. Michelle MacKillop,<br><br>   Plaintiff-Relator,<br><br>V.<br><br>Grand Canyon Education, Inc.; GC Education, Inc. f/k/a Grand Canyon University, Inc.; and Grand Canyon University f/k/a Gazelle University,<br><br>                    Defendants. | Case No. 2:23-cv-00467-DWL<br><br>**JOINT STATEMENT IN RESPONSE TO DOC. 313.** |

On October 24, 2025, the Court ordered the parties to file a joint memorandum addressing the process the Court should undertake pursuant to 31 U.S.C. § 3730(d) to evaluate aspects of the parties' proposed False Claims Act settlement, specifically Relator's negotiated share of proceeds of the proposed settlement and Relator's recovery of any "reasonable expenses." (Doc. 313). Relator, Defendants, and the United States jointly provide this response.

Section I (Case Background, Mediation Process, and Settlement Agreement) is joined by Relator and Defendants. Defendants otherwise take no position as to any other issues in this joint filing and do not join in Sections II-V at this time. Sections II (Relator Share Agreement), IV (Legal Analysis of Relator Share and Fees, Costs, and Expenses), and V (Procedures Governing Dismissal) are joined by Relator and the United States. Section III (Relator's Reasonable, Necessarily Incurred Expenses) is submitted by Relator.

As an initial matter, Relator and Defendants have revised their position regarding the confidentiality of the fees and costs terms of the proposed settlement. The parties submit with this Joint Statement: (1) the proposed settlement agreement between Relator and Defendants resolving Relator's claims brought on behalf of the United States under the False Claims Act (FCA), which includes the proposed settlement between Relator and Defendants resolving Relator's claims for fees, costs, and expenses under 31 U.S.C. § 3730(d); and (2) the proposed settlement agreement between Relator and the United States resolving Relator's share of the settlement proceeds under 31 U.S.C. § 3730(d). While not a party to the settlement agreement between Relator and Defendants, the United States has closely monitored the process and, after diligent review, consented to the proposed resolution. The United States and Relator separately agreed to the amount of Relator's share of the settlement proceeds. Relator and Defendants separately agreed to the amount of Relator's reasonable fees, costs, and expenses.

In its Order, the Court stated that it was inclined to follow *United States ex rel. Gelman v. Donovan*, Case 12-cv-5142-RJD-SJB, 2020 WL 4251363 (E.D.N.Y. July 23, 2020), by requiring the parties to file "declarations setting forth the relevant settlement terms" and "a memorandum of law addressing why the court should grant approval" of the parties' proposed

settlement. (Doc. 313, at 4). But where all parties have negotiated in good faith and reached a mutually agreeable result that is also consistent with the statute, the Court can and should, on the information presented, consent to the dismissal of this matter pursuant to 31 U.S.C. § 3730(b)(1).

**I.   Case Background, Mediation Process, and Settlement Agreement**

The Court is of course well-familiar with this case, but a brief description of the settlement process and current status of agreements reached will provide important context. This case was originally filed in 2018 in the District of Massachusetts; the government did not intervene; and, pursuant to 31 U.S.C. § 3730(b)(4)(B), Relator and Defendants proceeded to litigation. The parties extensively litigated the matter, conducting depositions, hiring experts, interviewing witnesses and securing declarations, responding to discovery requests, reviewing documents (over 1.6 million pages worth), filing and responding to a motion to dismiss, a motion to transfer, a motion for summary judgment, and motions in limine (as well as, inter alia, a motion to reconsider and a motion to exclude), and three times preparing for trial, twice to within weeks of voir dire.

During this fast-paced, time-intensive, and expensive litigation, the parties also attempted mediation multiple times. While previous attempts were not successful, in Spring 2024, the parties engaged the assistance of JAMS neutral Hon. Janice Symchych (Former), a much sought-after and well-regarded FCA mediator, with prior experience as an Assistant United States Attorney, a federal magistrate judge, and both outside counsel to FCA defendants and in-house counsel to a Fortune 200 company also subject to FCA claims.[1]

Over a period of two full days in 2024, Ms. Symchych—pursuant to JAMS' standard confidential mediation agreement—successfully led the mediation that resulted in the settlement in principle in this matter, about which the parties notified the Court on April 12, 2024 on the eve of trial. Doc. 265 (Relator and Defendants notifying Court "that they have reached a settlement in principle to resolve the above-captioned matter, subject to execution of a final settlement agreement and approvals required by the United States"). The settlement

---

[1] https://www.jamsadr.com/symchych/

2

1  proceeds that were negotiated, at arms' length, with a preeminent mediator, amount to
2  $28,000,000, to be paid to the United States. A copy of the final proposed settlement agreement
3  resolving the qui tam claims is attached to this Joint Statement as Exhibit A.
4        Consistent with the dictates of the FCA, government representatives were kept
5  informed of the mediation efforts prior to and during the mediation. The mediation focused on
6  the qui tam claims and, only after reaching an agreement in principle, did the parties negotiate
7  regarding statutory fees, costs, and expenses. In addition to the settlement in principle on the
8  qui tam claims, an agreement was reached between Relator and Defendants on those statutory
9  claims, also mediated with Ms. Symchych.
10        As the Court knows, the settlement of this case was contingent on an agreement being
11  reached on matters between Defendants and the Department of Education. That process took
12  some time, and, in Fall 2024 it looked like it would not be successful, so the parties sought to
13  reset the trial date. The Court obliged and set trial for October 2025. In the Spring of 2025,
14  Defendants and Relator recommenced settlement efforts, which required extensive
15  involvement of and negotiations among Defendants, counsel from the Department of Justice,
16  and representatives of the Department of Education. Agreement was reached, resolving that
17  outstanding contingency. With that agreement in place, Relator and Defendants proceeded to
18  seek the 31 U.S.C. § 3730 (b)(1) consent of the United States. That was obtained, and the
19  parties jointly notified the Court at the status hearing on October 22.
20        **II. Relator Share Agreement**
21        After Relator and Defendants reached the agreement described above, Relator and the
22  United States swiftly came to an agreement to resolve Relator's claim to a share of the proceeds
23  of the settlement (the "relator's share"). In a non-intervened case, the FCA allows for a relator
24  share of "not less than 25 percent and not more than 30 percent of the proceeds of the action
25  or settlement." 31 U.S.C. § 3730(d)(2).
26        Any agreement reached between a relator and the United States as to payment of a
27  relator's share must follow the normal approval processes within the Department of Justice to
28  ensure that the interests of the United States are protected and that the amount agreed to is

3

justifiable based on the circumstances of that particular case. The Department of Justice has developed internal guidelines and identified a series of factors to inform its decision regarding an appropriate amount for a relator's share.[2] The factors, which are not exhaustive, are consistent with the factors identified by Congress for determining a relator's share, which are "1) the significance of the information provided to the Government; 2) the contribution of the person who brought the action to the results obtained; and 3) whether the information which formed the basis of the suit was known to the Government before the suit was filed." S. Rep. No. 99-345, at 28 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5293. The Department of Justice followed its process here, and, as a result, the United States agreed to pay Relator a 29% share of the $28,000,000 in settlement proceeds, equal to $8,120,000.  In arriving at this figure, the United States considered the substantial time and resources Relator has devoted to litigating this case.  Relator successfully defeated a motion to dismiss and engaged in extensive discovery, including numerous depositions, review of millions of pages of documents and extensive summary judgment briefings. She also successfully defended against a motion for summary judgment and twice engaged in pretrial motions practice.

In agreeing to the proposed relator's share, Relator engaged in a thoughtful assessment of her contributions, including successful motions practice, comprehensive discovery, and preparing this seven-year-old case for trial on two occasions, and determined that it was in her reasoned best interest to accept the offer of the United States.

The proposed relator share agreement between the United States and Relator is attached to this Joint Statement. Like the qui tam settlement agreement discussed above, it is pending execution but is otherwise in final. Relator and the United States respectfully submit that the agreed upon relator share is a reasonable amount as contemplated by 31 U.S.C. § 3730 (d)(2).

---

[2] The Department's internal guidelines regarding the relator's share have been set forth verbatim in court opinions and law review articles. *See e.g.*, *United States ex rel. Alderson v. Quorum Health Group, Inc.*, 171 F. Supp. 2d 1323, 1333-34 (M.D. Fla. 2001); Marc S. Raspanti & David M. Laigaie, *Current Practice and Procedure Under the Whistleblower Provisions of the Federal False Claims Act*, 71 Temp. L. Rev. 23, 53 (1998).

### III. Relator's Reasonable, Necessarily Incurred Expenses

The proposed agreement regarding fees, costs, and expenses between Relator and Defendants is included at paragraph 2 of the proposed settlement agreement (Ex. A). That agreement reflects a global fees, costs, and expenses compromised resolution amount of $7,000,000. Of that, $346,837 represents a compromised amount of necessarily incurred expenses, including amounts paid to experts; document database maintenance and use payments; payments to a firm assisting with witness-identification; payments related to legal research, video depositions, and telephone meetings; and those related to travel for depositions, court appearances, and mediation.[3]

The agreement between Relator and Defendants is pending execution but is otherwise in final. Relator respectfully submits that the agreed upon expenses are reasonable and were necessarily incurred, and that the agreed upon attorneys' fees and costs are likewise reasonable, as contemplated by 31 U.S.C. § 3730 (d)(2).

### IV. Legal Analysis of Relator Share and Expenses

As the Court has noted, in non-intervened cases like this one, the False Claims Act provides "the person…settling the claim shall receive an amount which the court decides is reasonable" and "[s]uch person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred." 31 U.S.C. § 3730 (d)(2). The statute does not dictate how the courts conduct such inquiries. A very small minority of courts have landed where the Court indicated it is inclined to land. For its position, the Court identified a report and recommendation from a magistrate judge in the Eastern District of New York (*Gelman*) and a case from the Western District of Washington, *United States ex rel. Parikh v. Premera Blue Cross*, 2007 WL 1461165, *2 (W.D. Wash. 2007). Neither case hails from this district and neither is binding upon this Court. *Gelman* represents a vanishingly small minority viewpoint, and the overwhelming majority of courts do not read that provision of the FCA to

---

[3] Expenses here are necessarily incurred, case-related litigation costs that are not Rule 54 costs. *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "costs" as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees.")).

5

1 require the taking evidence or oral arguments, including the courts of this district.[4] Their
2 divergence from *Gelman* and *Parikh* does not reflect a lack of diligence or consideration. On
3 the contrary, when the parties themselves have reached a deliberate, considered resolution after
4 lengthy negotiations, often incurring additional expense to do so, a court may consider this
5 sufficient to establish the reasonableness of their resolution. The courts have long encouraged
6 parties to negotiate in good faith and resolve their disputes prior to filing motions or proceeding
7 to trial. They must believe that litigants can reach reasonable outcomes through compromise.

8       It should also be noted that subsection (d)(2) does not exist in isolation; rather, it is one
9 of four subparts Congress created under the heading of "Award to qui tam plaintiff." This
10 context suggests that the Court's role in deciding the amount of share a relator should receive
11 or ensuring that the relator be repaid for expenses necessarily incurred is to protect the relator
12 where there may be an imbalance of power between the relator and the United States or the
13 relator and the defendant. *See, e.g.*, *United States ex rel. Thompson v. Apollo Path, LLC*, No.
14 3:20-CV-2917-D, 2025 WL 256979, at *5 n.5 (N.D. Tex. Jan. 21, 2025) ("This discrete
15 provision [§ 3730(d)(2)] concerns the fair compensation of relators. And to the extent that
16 defining their right of recovery creates an implied right to recovery for the United States, this
17 right serves the insular purpose of fairly compensating relators while allowing the United
18 States to recover as the real party in interest.") Those protections necessarily are not needed
19 when there is no dispute. Where the relator has diligently negotiated with the United States
20 and the defendants, and agreed with them as to the amount of her share or her expenses, then
21 by doing so she concedes the reasonableness of those agreed amounts and waives the

---

[4] *See, e.g.*, *United States ex rel. Weiss v. United Seating and Mobility LLC, et al.*, Doc. 38, No. CV-20-01573-PHX-SPL (D. Ariz. Aug. 22, 2024) (dismissing three consolidated qui tam cases pursuant to the parties' stipulation and "subject to the terms of the settlement between the parties," which included a negotiated agreement between the United States and four relators as to relator's share), *United States ex rel. Guardiola v. Banner Health, et al.*, Doc. 39, No. CV-13-2443-PHX-DMF (D. Ariz. Apr. 13, 2018) (dismissing qui tam case pursuant to the parties' stipulation and "subject to the terms of the settlement between the parties," which included a negotiated agreement between the United States and relator as to relator's share), *United States ex rel. Bloink v. Carondelet Health Network*, Doc. 27, No. CV-11-00721-TUC-FRZ (D. Ariz. Aug. 18, 2014) (dismissing qui tam case pursuant to the parties' stipulation and "subject to the terms of the settlement between the parties," which included a negotiated agreement between the United States and relator as to relator's share).

6

protective intervention otherwise available to her under subsection (d)(2). It is thus wholly appropriate for district courts to interpret the statute in accordance with its structure and purpose and to assess the amount of relator's share and the amount of reasonable expenses necessarily incurred only when asked to do so by the parties whose rights, responsibilities, and protections are affected by those provisions.

In short, *Gelman* and *Parikh* should not guide this Court's analysis, and, instead, the Court should look to the legion cases supporting that it need not and should not, under the circumstances here, undertake *sua sponte* to determine the amount of share and expenses due to Relator. If the Court nonetheless chooses to continue inquiry under in its *Gelman* reading of the FCA, there are only two factors that should inform the Court's determination of those amounts: the fact that the parties to the relator's share agreement are in accord and the amount is within the statutory range and to be paid out of the settlement proceeds; and the fact that the parties to the expense-payment agreement are in accord.

**A. The Agreed-Upon Relator's Share is Squarely Within the Statutory Range**

As set forth in 31 U.S.C. § 3730(d)(2), as the "person bringing the action or settling the claim," Relator is entitled to a share of the "proceeds of the action or settlement," which amount is to be paid out of those proceeds. The amount must satisfy the statutory requirements that it fall within the prescribed range and be paid out of, in this case, the settlement proceeds.

As the United States did not intervene in this matter, Relator is entitled to a share of the proceeds recovered on behalf of the United States in an amount between 25 and 30 percent of that recovery. *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1123 (9th Cir. 2015), citing 31 U.S.C. § 3730(d)(2). When courts review the reasonableness of this statutory entitlement—even when it is not needed—that review serves to ensure that the award is within the statutory range. *United States ex rel. Sharma v. Univ. of S. Cal.*, 217 F.3d 1141, 1144 (9th Cir. 2000) ("District courts have the power to modify FCA settlements <u>that stray from the statutory requirements</u>") (emphasis added)); *Gelman,* at *2.

Here, Relator and the United States have agreed upon a 29% relator's share. That percentage is within the statutory range for non-intervened FCA resolutions. 31 U.S.C. §

3730(d)(2). As noted above, consistent with the factors identified by Congress for determining a relator's share and the Department of Justice's guidelines, the agreed upon relator's share here takes into account the contributions Relator provided from the beginning of the case until its conclusion. For these reasons, the agreed upon relator's share here is reasonable.

### B.  Relator's Reasonable Expenses were Necessarily Incurred

As also set forth in 31 U.S.C. § 3730(d)(2), Relator is also entitled to an amount "for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."

Here, Relator and Defendants have agreed to a global resolution of all attorneys' fees, costs, and expenses through an arms' length negotiation. Thus, Defendants do not contest the amount they are paying for this resolution of Relator's statutory entitlements, such that there is no case or controversy before the Court as to this issue. *U.S. Bancorp Mort. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 21 (1994) ("no statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy"). Moreover, given that the parties reached a global resolution as to these issues, compromised through mediation with a highly experienced mediator, pursuant to mediator-required confidentiality provisions, parsing expenses out to diminish the agreed-upon payment in whole or in part would not actually serve to do so, because that agreed-upon amount was, as a whole, a compromise and does not represent the total amount of attorneys' fees, costs, and expenses incurred by Relator in this action.

For these reasons, the amount allocated to payment of expenses necessarily incurred is reasonable.

### V.  Procedures Governing Dismissal

Voluntary dismissals of qui tam lawsuits are not self-executing, as they are in other cases.

Federal Rule of Civil Procedure 41 (a)(1)(A)(ii) provides for voluntary dismissal of an action upon the filing of "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). However, this rule is read in conjunction with Section

1  3730(b)(1) of the FCA, which allows dismissal "only if the court and the Attorney General
2  give written consent to the dismissal and their reasons for consenting." *See also*, Fed. R. Civ.
3  P. 41 (1937 advisory committee note) ("Provisions regarding dismissal in such statutes as …
4  U.S.C., Title 31, § 232 [now § 3730] … are preserved by paragraph (1) [of Rule 41(a)]");
5  *United States v. UCB, Inc.*, 970 F.3d 835, 849–51 (7th Cir. 2020) (stating that the portion of
6  the FCA governing dismissals over the plaintiff-relator's objections should not "be construed
7  to eliminate the right to dismiss under the first half of Rule 41(a), whose language it mirrors,"
8  and referencing the possibility of a stipulated dismissal of an FCA case under Rule
9  41(a)(1)(A)(ii)); *Youssef v. Tishman Constr. Corp.*, 744 F.3d 821, 826 (2d Cir. 2014) ("For the
10 purposes of this case, Rule 41(a)(1)(A)(i) incorporates the court-consent requirement
11 contained in 31 U.S.C. § 3730(b)(1), and the two provisions must be read together").

As such, the parties' stipulation of dismissal is effective only if the requirements under 31 U.S.C. § 3730(b)(1) for the United States and the Court to "consent" to settlement are met.

**A.  The Consent of the United States**

Both because the United States is the real party in interest and because the FCA and Rule 41 mandate it, the consent of the United States is required when the relator and defendant settle a non-intervened case. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009); 31 U.S.C. § 3730(b)(1) (a qui tam "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting"). At the status conference on October 22, 2025, the United States confirmed to the Court that, having reviewed the settlement reached between Relator and Defendants, the United States would consent to the dismissal of this matter without prejudice to the United States. The United States further affirms that position by joining this joint statement. When Relator and Defendants file their Rule 41 stipulation of dismissal, the United States will also file a statement of consent in writing, including its reasons.

**B.  The Consent of the Court**

In cases where there is no dispute among the parties and the agreed result is also consistent with the statute, as here, the Court's consent likely turns on whether the parties have

9

1  adhered to the appropriate procedures in reaching their proposed resolution, as the inquiry
2  must be something far less than the substantive inquiry that informs a court when the United
3  States seeks to settle an action with the defendant over the relator's objection. *Cf.* 31 U.S.C. §
4  3730(c)(2)(B) (permitting such settlements only if "the court determines" they are "fair,
5  adequate, and reasonable under all the circumstances").

6  Reading the statutory consent requirement under 31 U.S.C. § 3730(b)(1) otherwise
7  could have the unintended result of creating a dispute where there is none.[5] It would seem
8  contrary to the interests of justice and judicial economy to force parties to litigate a matter
9  when they have reached a reasonable settlement, the United States does not object to the terms
10 of the settlement, and there are no allegations that the public's rights have not been fully
11 protected.

12 An assessment of compliance with dismissal procedure rather than a substantive review
13 of the fairness of the agreement reached by Relator and Defendants—and consented to by the
14 United States—comports with contract law, as well. In short, where the parties impacted by
15 the settlement have negotiated the terms at arms' length, agreed to those terms, and consent to
16 dismissal of the action, the Court is armed with the best information from the people in the
17 best position to assess their best interests. *Cf.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,
18 965 (9th Cir. 2009) (in the class action context, the Ninth Circuit "put[s] a good deal of stock
19 in the product of an arms-length, non-collusive, negotiated resolution"); *In re Wireless
20 Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow
21 sufficient discovery and genuine arms-length negotiation are presumed fair").

22 Thus, it is the view of the parties and the government that the FCA court-consent
23 requirement under the circumstances here is centered on ensuring adherence to procedure, and
24 the parties will seek the Court's consent to dismissal, pursuant to Rule 41.

---

[5] The Court cites *Sharma* for the Ninth Circuit's "broad[]" recognition that "the district court must approve a proposed settlement in a qui tam case." Doc. 313, citing *United States ex rel. Sharma v. Univ. of S. Cal.*, 217 F.3d 1141, 1143 (9th Cir. 2000). Respectfully, that assertion from the *Sharma* court is not grounded in the text of the statute, which does not impose that requirement, and the opinion cites to no text.

Respectfully submitted this 14th day of November 2025.

/s/ *Chandra Napora*
MORGAN VERKAMP LLC
Chandra Napora, Ohio Bar #0092886 (*pro hac vice*)
Jonathan M. Lischak, Ohio Bar #0097669 (*pro hac vice*)
4410 Carver Woods Dr., Ste. 200
Cincinnati, OH 45242 Telephone: (513) 651-4400
chandra.napora@morganverkamp.com
jonathan.lischak@morganverkamp.com

TODD & WELD LLP
Christopher R. O'Hara, MA BBO #548611 (*pro hac vice*)
Evan A. Johnson, MA BBO # 699582 (*pro hac vice*)
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
cohara@toddweld.com
ejohnson@toddweld.com

JEFF NEWMAN LAW
Jeffrey A. Newman, MA BBO # 370450 (*pro hac vice*)
One Story Terrace
Marblehead, MA 01945
(617)823-3217
Jeffrey.newman1@gmail.com

VEZINA LAW GROUP
J. Marc Vezina, Esq., MI Bar #P76232 (*pro hac vice*)
Kelli M. Khalaf, LA Bar #23213 (*pro hac vice*)
18 So. Broadway Street, Suite 200
Lake Orion, MI 48362
(248) 558-2701
jmv@vezinalaw.com
kkhalaf@vezinalaw.com

*Attorneys for Plaintiff-Relator Michelle Mackillop*

ALSTON & BIRD LLP
Derin B. Dickerson, GA Bar #220620 (*pro hac vice*)
Jason D. Popp, GA Bar #213057 (*pro hac vice*)
Gavin Reinke, GA Bar #159424 (*pro hac vice*)
Caroline R. Strumph, GA Bar #250168 (*pro hac vice*)
Stephen Simrill, GA Bar #958166 (*pro hac vice*)

11

1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
derin.dickerson@alston.com
jason.popp@alston.com
gavin.reinke@alston.com
caroline.strumph@alston.com
stephen.simrill@alston.com

*Attorneys for Defendants Grand Canyon Education, Inc. and GC Education Inc.*

SAUL EWING LLP
Aloke Chakravarty, MA Bar #637288 (*pro hac vice*)
131 Dartmouth Street
Suite 501
Boston, MA 02116
Telephone: (617) 912-0949
aloke.chakravarty@saul.com

Steven M. Gombos, VA Bar 30788 (*pro hac vice*)
David A. Obuchowicz, VA Bar 82483 (*pro hac vice*)
Jacob C. Shorter, VA Bar 82638 (*pro hac vice*)
GOMBOS LEYTON PC
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: 703-934-2660
sgombos@glpclaw.com
dobuchowicz@glpclaw.com
jshorter@glpclaw.com

*Attorneys for Defendant Grand Canyon University*

ALLISON C. CARROLL
Trial Attorney
U.S Department of Justice, Civil Division,
Commercial Litigation Branch, Fraud Section
175 N Street, N.E.
Washington, DC 20002
Phone: (202) 353-1006
Allison.C.Carroll@usdoj.gov

BRIAN M. LAMACCHIA
Assistant United States Attorney

12

United States Attorney's Office, District of Massachusetts
John J. Moakley U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210
Phone: (617) 748-3100
brian.lamacchia@usdoj.gov

LON R. LEAVITT
Assistant United States Attorney
United States Attorney's Office, District of Arizona
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Phone: (602) 514-7500
Lon.Leavitt@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I, Chandra Napora, hereby certify that on this 14th day of November 2025, I filed the foregoing document using the Court's CM/ECF system, resulting in service on all counsel of record in this matter.

/s/ *Chandra Napora*
Chandra Napora